(No. 22845.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN SKOLNICK, Plaintiff in Error.

*Opinion filed February 21, 1935.*

W. W. O'BRIEN, and THOMAS J. MCCORMICK, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of robbery while armed with a dangerous weapon. He is charged in the indictment with having assaulted one Aaron Westbrook and taking from

him $20 in money. His age was found to be twenty-four years. He has sued out this writ of error.

Aaron Westbrook testified, in substance, as follows: About 11:00 P. M. on July 24, 1933, he was an attendant at a gasoline filling station. Plaintiff in error drove in and ordered gasoline. While making change for a five-dollar bill plaintiff in error had given to pay for the gasoline, the latter seized him by the collar and drew him toward the car, demanding that he hand over the bills that he had in his hand and his money-changer. He testified that plaintiff in error had a gun in his hand, and that after taking the money, amounting to $20, and the money-changer, he backed out of the filling station and disappeared. Westbrook took the car license number and telephoned it to the police. Certain police officers received a radiogram while near this gasoline station. They drove toward it and met a car bearing the same license number. They recognized plaintiff in error sitting in the car and driving it. After passing the squad car of the officers the driver of the car drove rapidly east, then north and then west to Hermitage avenue, where it struck a mail truck. In this flight the officers fired at the car. One of them testified on the trial that as he fired the driver seemed to slump in the seat, and when they reached the scene of the collision with the mail truck he found the driver of the other car had escaped, leaving a revolver, a hat, the inner rim of which was saturated with blood, and a money-changer, identified by Westbrook as having been taken from him. The officer also testified that the driver of the car which collided with the mail truck jumped out, ran south on Hermitage avenue and turned into an alley. The officers followed and traced him by blood marks in the alley, and finally, with assistance of some boys who had seen him, found plaintiff in error, with his head bandaged, in a drug store on North Milwaukee avenue. They arrested him and found $24 on

his person. Westbrook identified plaintiff in error at the police station and on the witness stand.

Plaintiff in error denied the charge and testified that the injury to his head was caused by an encounter which he had with two men who dragged him around a corner from a beer and sandwich stand where he had stopped to get a sandwich and a glass of beer while looking for a store. He testified that on inquiry as to where he could find a doctor he was taken to the drug store, where his forehead was stitched and where he was when arrested. Two witnesses testified in his behalf that they saw him at about 11:30 on the night in question; that he was bleeding from a wound in the forehead; that he had no hat with him, and that they took him to a doctor's office.

Dr. Morris Kremer testified that he treated plaintiff in error in his office between 11:30 and 11:45 on the night in question; that plaintiff in error told him he had had a fight in a saloon, and that the wound on his head did not look like a bullet wound.

The principal errors assigned concern the sufficiency of the identification of plaintiff in error as the robber, and errors committed on cross-examination of plaintiff in error. Concerning the matter of identification, it need only be said that Westbrook, who had ample opportunity to see plaintiff in error in a well-lighted gasoline station, positively identified him and also noted the automobile license number. More than this, the officers who pursued and later captured the driver of that car identified plaintiff in error as the man they saw driving the car that had been at the gasoline station at the time of the robbery. The gun, the hat saturated with blood, and the money-changer taken from Westbrook, were found in the car. Police officers trailed plaintiff in error by blood stains and by assistance of boys who had met him at the place where the trail was lost. We have no doubt as to the sufficiency of identification.

Concerning the complaint that plaintiff in error was improperly cross-examined, his counsel say that he was questioned about other crimes. So far as disclosed by the abstract, testimony to which this complaint might in any way be applied appears on cross-examination of plaintiff in error concerning a prior statement made by him to the police as to the source from which he had procured the money found in his possession. He testified that he had collected the money, and that it belonged to his father and himself in their business. A police officer had testified that he had about $25 when arrested, which he said he had gotten in a gambling joint on Madison street, near Kedzie avenue, as result of a dice game. On cross-examination of plaintiff in error he was asked if he did not make such a statement to the police. He denied having so stated. This examination does not come within the category of prohibited proof concerning other crimes. It is always competent to show in a case of this kind where the accused procured the money found in his possession, and it is likewise competent, as a matter affecting his credibility, to question him concerning any statement made to the police officers as to the source of such funds. *People* v. *Popovich,* 295 Ill. 491; *Bressler* v. *People,* 117 id. 422.

Counsel also argue that the court erred in re-instating this cause, which had been stricken from the docket with leave to re-instate. It appears from the record that on September 11, 1933, the cause was, on motion of the State's attorney, stricken off with leave to re-instate, and on October 9 was re-instated on motion. Plaintiff in error thereafter appeared in person and by counsel and demanded a trial, and later entered upon the trial without objection to the re-instatement of the cause. Counsel's argument is, that when the People seek to re-instate a case stricken from the docket with leave to re-instate, the defendant is entitled to notice before such re-instatement may be made. No authority is cited in support of this contention and we

know of none. In *People* v. *Kidd,* 357 Ill. 133, the opposite was held to be the rule. It may be further observed that plaintiff in error having proceeded to trial without objection, he is not in position to raise the point here.

There is no error requiring reversal of the judgment, and the judgment is affirmed.   *Judgment affirmed.*